WILLIAMS MANUFACTURING COMPANY v. WALKER.

4-7179                                    175 S. W. 2d 380

Opinion delivered November 29, 1943.

*M. J. Harrison,* for appellant.

*Sid J. Reid,* for appellee.

Robins, J. Appellants, Williams Manufacturing Company and Lumbermen's Reciprocal Insurance Exchange, its insurance carrier, seek by this appeal to reverse the judgment of the circuit court setting aside award of the Arkansas Workmen's Compensation Commission against appellee, Charley M. Walker, and ordering that appellee recover compensation for disability arising from a hernia, which appellee claimed he suffered, as a result of an injury sustained by him while in the employ of appellant, Williams Manufacturing Company.

It is undisputed that on June 3, 1942, appellee, working as a laborer for this company, caught with a cant hook a rolling log, which it was his duty to catch, in order to straighten it out so that it would run into a pond properly; that on account of the speed at which this log was moving it gave appellee a severe jerk; that on the morning of the accident appellee reported his injury to his foreman; that at noon following the accident appellee went to see Dr. O. R. Kelley, the employer's physician, and told him of his injury; that Dr. Kelley gave him some medicine and appellee went home, returning next day for another visit to Dr. Kelley; that appellee had not been able to work since receiving the injury, although he had tried to do so.

There is some contradiction in the testimony as to whether or not appellee had a hernia. Four physicians, Dr. John W. Cole, Dr. F. Walter Carruthers, Dr. W. H. Simmons and Dr. O. R. Kelley, the employer's physician, testified that appellee had suffered an umbilical hernia. Dr. W. T. Lowe stated that appellee had no umbilical hernia. Dr. Joe F. Shuffield said that he had examined appellee, and that he had no record of finding an umbilical hernia, but said: "It is quite possible he had an umbilical hernia and I did not observe it."

The opinion of the Commission apparently recognized the existence of a hernia in the appellee's abdomen at some time following the accident on June 3, and we think the evidence abundantly justifies a finding that following and resulting from the accident appellee suffered such a hernia.

Appellee testified that on the morning of the accident he notified his foreman of his injury; that he noticed a burning sensation in the region of his naval—this seems from the testimony to be a subjective symptom of hernia —and told Dr. Kelley about it on the day of the accident, and that the next day he called Dr. Kelley's attention to the protuberance or swelling around the navel, which he says was about the size of his finger; that he experienced severe pain immediately after this injury in his abdomen and still had it; that he was a manual laborer by occupa-

tion, and was not qualified to do anything but manual labor; that he had tried to work since the injury and was not able to do so; that prior to the injury he had not had any symptoms of pain in the hernia region.

The Commission found that the parties were bound by the provisions of the Arkansas Workmen's Compensation Act, Act No. 319 of 1939; that appellee suffered an accidental injury on June 3, 1942, which arose out of his employment; that this injury resulted in disability which continued until September 1, 1942, and that the hernia sustained by appellee ''does not meet the requirements laid down by the Arkansas Workmen's Compensation Act governing the compensability of hernia.'' The Commission, in its conclusions of law, declared that the ''medical testimony . . . from Dr. O. R. Kelley, who treated this claimant on the day of the accidental injury and immediately thereafter, is that this claimant made no mention to him of having suffered any hernia until at some time between the fourth and eighth week of his treatment.''

The finding of the Commission to the effect that appellee did not give sufficient notice of the hernia within forty-eight hours after it occurred, as required by the statute, is in our opinion not supported by substantial testimony. Appellee testified under oath that he advised Dr. Kelley almost immediately after the occurrence of the injury that he had a burning sensation in the neighborhood of his navel and that the next day he called Dr. Kelley's attention to the protrusion in the region of the navel. Dr. Kelley did not testify, but a letter from him to the insurance carrier was made a part of the record without objection, and apparently the Commission based its denial of the claim on what it found to be the effect of this letter. In this letter, however, Dr. Kelley did not specifically deny that appellee had given him this information almost immediately after the injury and also on the following day, but only said: ''I do not think he did until from the fourth to eighth week after injury.'' Such a statement could not be said to amount to a contradiction of the testimony of appellee.

But, even if it was not established that appellee specifically advised Dr. Kelley of the existence of the hernia within the forty-eight hour period, this would not be sufficient to justify a denial of appellee's claim. It is not disputed that soon after appellee was injured he reported his injury to his employer and to his employer's physician, and that he was examined by his employer's physician on the day of the accident and also on the following day.

In 71 Corpus Juris, p. 980, it is said: "With respect to the nature and extent of the injury, a notice which gives the employer such knowledge as will enable him to provide the necessary medical or other attention that the nature or extent of the injury demands is sufficient. . . . Since the requirement of notice necessarily implies knowledge on the part of the employee of the injury for which claim is made, where an employee reports his injury as he knows it without designating its nature because not aware thereof, compensation cannot therefore be refused."

The Kentucky Court of Appeals, in the case of *Bates & Rogers Const. Co.* v. *Emmons*, 205 Ky. 21, 265 S. W. 447, dealing with a somewhat similar question arising under a workmen's compensation act, said: "But it is insisted that they had no notice that his eye was injured, and this is the thing for which compensation is now claimed. But notice of a physical injury carries with it notice of all those things which may reasonably be anticipated to result from it."

In the case of *Page* v. *State Insurance Fund*, 53 Idaho 117, 22 P. 2d 681, there was involved claim of Irene Page under the Workmen's Compensation Act of Idaho for disability from hernia. The claim was contested on the ground that hernia was not reported to the employer within the time fixed by the statute. The evidence in that case showed that the claimant struck her right groin against the corner of a table and began to suffer therefrom immediately afterwards, and on the following day she notified her employer of the accident and injury, and remained under treatment thereafter until February 7,

when she consulted a physician who found the hernia. The insurance carrier in that case insisted that her hernia was not such as was covered by the workmen's compensation act for the reason that no notice of existence of the hernia was given to the employer until long after the expiration of the time limit in the act for such notice. The court in that case said: "She gave the agent or representative of her employer all of the information concerning her injury. Notice of a physical injury carries with it notice of all things which may be reasonably anticipated to result from it. *Bates & Rogers Const. Co.*, v. *Emmons*, 205 Ky. 21, 265 S. W. 447, 448. The requirement of the report necessarily implies knowledge of the injury for which claim is made. It was impossible in this case for respondent to report to the employer that the injury from which she was suffering was known as hernia until she knew that such injuries were so denominated, and this she first learned from her physician, on February 7, who diagnosed it as such. She reported the accident and her physical condition to the agent of the employer the day following the accident. Such condition was afterwards diagnosed as hernia. The employer was possessed of the same knowledge as respondent and was in a position to make a diagnosis as well as respondent was, and the mere fact that she had not reported the hernia, by so designating it, when in truth and in fact it was such, does not justify refusing compensation on that ground."

The Court of Appeals of Kentucky, in the case of *Hay* v. *Swiss Oil Co.*, 249 Ky. 165, 60 S. W. 2d 385, said: "1, 2). As to notice: In *Bates & Rogers Const. Co.* v. *Allen*, 183 Ky. 815, 210 S. W. 467, this court thus construed the statute: 'Where a notice is not given "as soon as practicable," but the failure to give it "as soon as practicable" is caused by "mistake or other reasonable cause," this excuses the failure to give the notice "as soon as practicable," and therefore, in considering the question whether a notice was given "as soon as practicable," and an excuse is offered for this failure, it becomes important to inquire into the sufficiency of the excuse, so that it may be determined whether or not the failure to give the notice "as soon as practicable" was occasioned by "mistake or

other reasonable cause,'' and also whether the employer was prejudiced by the delay. Where the employer is not prejudiced by the failure to give the notice at as early a date as it might have been or should have been given, and where the failure to give it sooner was occasioned by an honest mistake on the part of the employee, we do not think a fair consideration of the statute warrants the rejection of the employee's claim for compensation solely on account of the delay in giving notice.' To same effect see *Kenmont Coal Co.* v. *Martin,* 227 Ky. 217, 12 S. W. 2d 314. In *Wilburn* v. *Auto Exchange,* 198 Ky. 29, 247 S. W. 1109, the court held this: 'The authorities generally are in accord upon this subject, holding that any fact or circumstance which brings to the attention of the employer or his principal representative knowledge that the employee has received an injury will be sufficient. In other words, the requirements of §§ 4914 and 4915, Kentucky Statutes, with respect to the written notice to be given to the employer is directory merely.' To same effect see *Clover Fork Coal* v. *Washington,* 247 Ky. 848, 57 S. W. 2d 994. In *Hornbrook-Price Co.* v. *Stewart,* 66 Ind. App. 400, 118 N. E. 315, it appeared that an employee suffered a rupture in June, but it was of such a character that it did not immediately disable him, and, with the aid of a truss, he continued to work for the same employer until January, when, due to the aggravated condition of the rupture, he was forced to quit work. The court said: 'In January, 1917, because of the aggravated condition of his rupture, he became totally disabled and was obliged to quit the work. Under these circumstances it must be held that the real injury did not develop until January, 1917.' In *Brown's Case,* 228 Mass. 31, 116 N. E. 897, where the rupture did not manifest itself at the time of the strain but developed two or three weeks later, the court held the notice given then in time. The English statute is similar to ours and the same rule is applied by the English courts. See notes 14 British Ruling Cases, pp. 506-510; also *Duffy's Case,* 226 Mass. 131, 115 N. E. 248; *Johansen* v. *Union, etc., Co.,* 99 Neb. 328, 156 N. W. 511; *Vandalia Coal Co.* v. *Holtz,* 68 Ind. App. 670, 120 N. E. 386; Schneider on Workmen's Compensation, § 541;

*McGuire* v. *Phelan-Shirley Co.*, 111 Neb. 609, 197 N. W. 615. It is the well-settled rule that the statute must be liberally construed to effectuate its purposes. It does not appear that appellee was in anywise prejudiced by the delay in giving notice. Working men are not expected to know the meaning of the symptoms they may have. They should not trouble their employer with complaints without reasonable grounds for doing so. Appellant in good faith continued at work and gave notice to the foreman when the knot appeared, and, when he treated it lightly, went on with his work until the knot troubled him, then went to the mine doctor and for the first time knew of the hernia from him. There was no such delay here in giving notice as affected appellant's rights under the statute. The delay was occasioned by a reasonable cause. The employer's principal representative had knowledge that the employee had received the injury when the knot appeared and he was so notified. (3, 4) 2. Did the hernia appear suddenly and immediately following the injury? In *Maryland Casualty Co.* v. *Robinson*, 149 Va. 307, 141 S. E. 225, on like facts the court said: 'The commission is fully supported in its holding in this case by the medical opinion to the effect that the connection between the injury which was the cause and the hernia which was the consequence was sudden, and that the hernia which later became so apparent was the result of the accidental injury without any supervening cause. It would be too narrow a construction of the statute to hold in such a case that compensation should be disallowed merely because the claimant was ignorant either of the precise nature or extent of his injury until after the protrusion developed and he had taken expert advice.' To the same effect see *Hornbrook-Price Co.* v. *Stewart*, 66 Ind. App. 400, 118 N. E. 315; *Black Mountain Corporation* v. *Murphy*, 218 Ky. 40, 290 S. W. 1036. The board properly held that it is the rupture which must exist immediately upon the injury and that the statute does not mean that the knot or protrusion in cases of hernia must appear immediately.''

Here the evidence is undisputed that appellee, in the discharge of his duties, suffered an accidental injury, that

he promptly reported it to his employer and almost immediately after its occurrence submitted himself to the examination of his employer's physician, who admitted finding the hernia from four to eight weeks later.

The Commission, in its findings, recognized the existence of the hernia, and there is nothing in the proof that would justify a finding that this hernia was caused by anything other than the original injury suffered by appellee. The act here involved is a highly remedial statute enacted for the purpose of placing a part of the burden of loss from industrial accidents upon the public at large, thereby ameliorating, to some extent, the condition of the worker who suffers disability as a result of his effort to earn his daily bread by the sweat of his brow.

As was said by Justice CARTER, in the case of *Birchett* v. *Tuf-Nut Garment Mfg. Co.*, 205 Ark. 483, at p. 489, 169 S. W. 2d 574, "The theory behind the Workmen's Compensation Act is this: Every industry exposes those engaged in it to certain risks of being hurt, such risks arising out of the mere fact of being engaged in that industry. The policy behind the act is the decision of the people that it is fairer to charge as an expense of the industry (to be paid by the ultimate consumer just as he pays for the raw materials used by the industry) a part of the losses arising from the risks, to which those engaged in that industry are exposed by reason of being so engaged, than it is to let such losses fall entirely upon the employee who gets hurt."

These compensation acts are entitled to and have universally received a liberal construction from the courts. The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities—by putting form above substance.

In the case at bar there is no intimation in the record of any malingering, lack of good faith, or misrepresentation or concealment of facts, on the part of appellee. Since he suffered an accidental injury in the course of his employment and it clearly appears that he did all that could be reasonably expected of a workman in the way of reporting his injury promptly and submitting himself to

examination by his employer's physician, we conclude that the judgment of the lower court was correct and must be affirmed. It is so ordered.